| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS<br>SUPERIOR COURT DEPARTMENT<br>COUNTY OF SUFFOLK | DOCKET NO. _____ |
|---|---|---|
| **PLAINTIFF(S)**<br>Markley Cloud Services, LLC | **DEFENDANT(S)**<br>UFCW Local 1262 | |

| Plaintiff Atty | Theresa Finn Dever, Riley & Dever, P.C. | Type Defendant's Attorney Name |
|---|---|---|
| Address | 210 Broadway, Suite 101 | Defendant Atty |
| | | Address |
| City | Lynnfield   State MA   Zip Code 01940 | City   State   Zip Code |
| Tel. | +1 (781) 581-9880   BBO# 564,319 | |

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Services Labor and Materials - Fast Track | | ( ) Yes   ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses                                           $_____
   2. Total doctor expenses                                             $_____
   3. Total chiropractic expenses                                       $_____
   4. Total physical therapy expenses                                   $_____
   5. Total other expenses (describe)                                   $_____
                                                       Subtotal         $_____
B. Documented lost wages and compensation to date                       $_____
C. Documented property damages to date                                  $_____
D. Reasonably anticipated future medical expenses                       $_____
E. Reasonably anticipated lost wages and compensation to date           $_____
F. Other documented items of damages (describe)                         $_____

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                              Total $_____

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

| Defendant breached its agreement to the Plaintiff by failing to make monthly payments to Plaintiff in accordance with its cloud services agreement. | TOTAL $.9.0.3.3.4.. |
|---|---|

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _Theresa Finn Dever_     Date: 3/23/2015

A.O.S.C. 3-2007

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                         SUPERIOR COURT DEPARTMENT

MARKLEY CLOUD SERVICES, LLC,     )
    Plaintiff                                            )
                                                              )
                                                              )
v.                                                            )   DOCKET NO:
                                                              )
UNITED FOOD AND COMMERCIAL    )
WORKERS LOCAL 1262,                         )
    Defendant.                                         )
                                                              )

## COMPLAINT

### Parties

1. Plaintiff Markley Cloud Services, LLC ("MCS") is a Limited Liability Company organized under the laws of the state of Delaware with a principal place of business at One Summer Street, Boston, Suffolk County, Massachusetts.

2. Defendant United Food and Commercial Workers ("UFCW") Local 1262 is an unincorporated labor union with a principal place of business at 1389 Broad Street, Clifton, New Jersey.

### Factual Allegations

3. On or about May 28, 2014, MCS and UFCW Local 1262 entered into a Cloud Services Agreement pursuant to which MCS agreed to provide a virtualized compute, network and storage services via a self-service portal allowing the user to manage its own environment. A true and accurate copy of the Markley Cloud Services Agreement ("the Agreement") is attached hereto as Exhibit "A."

4. The term of the Agreement was for three years beginning on May 28, 2014.

5. UFCW Local 1262 agreed to pay MCS a monthly fee of $2584.69 for thirty-six months.

6. The Agreement expressly states, "CUSTOMER ACKNOWLEDGES THAT CUSTOMER WILL NOT BE ENTITLED TO ANY REFUND IN THE EVENT THAT THE THREE-YEAR TERM IS TERMINATED DUE TO THE BREACH OF CUSTOMER PRIOR TO THE EXPIRATION OF THE THREE-YEAR TERM." (MCS, ¶ 4) (emphasis original).

7. The Fees for the first month of the Term and the set up fees were due at the signing of this Agreement.

8. All monthly payments are due on the first day of each and every calendar month during the term of the Agreement without any setoff or deduction.

9. The Agreement imposes an interest rate of the higher of either 1.5% per month interest rate per month or whatever the highest permissible rate of interest permitted by Massachusetts law upon all late payments.

10. Pursuant to the Agreement, MCS can terminate service after giving a 5 day notice of disconnection.

11. The Agreement also provides that MCS is entitled to recover its reasonable cost of collection, including attorneys' fees and court costs.

12. In the Agreement, the parties agree that the governing law is the law of the Commonwealth of Massachusetts.

13. The parties agreed that any claims against the other must be filed in Suffolk County, Massachusetts.

## COUNT I

### (Breach of Contract)

14. Plaintiff repeats, realleges and reincorporates by reference all allegations set forth in Paragraphs 1 through 13 above as if fully stated herein.

15. Plaintiff and Defendant entered into a binding contract in which Plaintiff offered to perform the services described in the agreement, Defendants accepted the offer and promised to pay for said services.

16. Defendant has breached this Agreement, by failing to pay for the services as described above.

17. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages to date in the amount of $23,132.98 plus interest, attorneys' fees and costs. For the remainder of the contract term of 36 months, Plaintiff will suffer additional damages of $67,201.94 plus interest.

WHEREFORE, Plaintiff respectfully requests that this Court adjudicate that Defendant has breached its agreement with the Plaintiff and owes the Plaintiff the sum of $90,334.92 plus interest, attorneys' fees and costs.

## COUNT II

### (Quantum Meruit)

18. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 17 as if fully stated herein.

19. Plaintiff performed work for and incurred expenses on behalf of the Defendants.

20. Defendant knew that Plaintiff performed the work and incurred the expenses and further knew that Plaintiff expected to be paid for the same.

21. Defendant has, without justification and beyond reasonable period of time, deferred settlement of the balance amounts due for the work done and failed to reimburse the Plaintiff for its reasonable expenses.

22. Defendant is liable to Plaintiff for the fair market value of the work performed and for the reasonable expenses incurred by the Plaintiff in the performance of the work.

WHEREFORE, Plaintiff respectfully request that this Court adjudicate that Defendant has breached its agreement with the Plaintiff and owes the Plaintiff the sum of the fair market value of its services plus interest, attorneys' fees and costs.

## ADDITIONAL RELIEF REQUESTED

23. Plaintiffs further pray that this court grant such different or additional relief as this court deems just and appropriate.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS OF THE COMPLAINT SO TRIABLE.**

Plaintiff,
MARKELY CLOUD
SERVICES, LLC
By its attorneys,

Joseph P. Dever
B.B.O. No.: 564237
Theresa Finn Dever
B.B.O. No.: 564319
RILEY & DEVER, P.C.
Lynnfield Woods Office Park
210 Broadway, Suite 101
Lynnfield, MA  01940-2351
Tel. (781) 581-9880
tdever@rileydever.com

DATED: 3/23/2015

4

## MARKLEY CLOUD SERVICES AGREEMENT

This Markley Cloud Services Agreement (the "Agreement"), dated as of May 28, 2014 2014, is made by and between MARKLEY CLOUD SERVICES, LLC, a Delaware Limited Liability Company ("MCS"), and UFCW LOCAL 1262, ("Customer"). Customer's use of the services provided by MCS ("Services") is governed by the terms of this Agreement and any attachment hereto. This Agreement is the complete and exclusive agreement between Customer and MCS regarding its subject matter and supersedes and replaces any prior agreement, understanding, or communication, written or oral.

    1. MCS'S OBLIGATIONS. Contingent on MCS's acceptance of an order and subject to the terms of the Agreement, MCS agrees to use reasonable commercial efforts to provide to Customer the Services referenced in Exhibit A attached hereto and to otherwise comply with the terms of this Agreement.

    2. CUSTOMER'S OBLIGATIONS. Customer agrees to do each of the following: (i) comply with applicable law and the terms of this Agreement (ii) pay when due the fees for the Services as referenced in Exhibit A, (iii) use reasonable security precautions in light of Customer's use of the Services, (iv) cooperate with MCS's reasonable investigation of outages, security problems, and any suspected breach of the Agreement, (v) keep Customer's billing contact and other account information up to date; and (vi) immediately notify MCS of any unauthorized use of Customer's account or any other breach of security.

    3. SERVICE LEVEL AGREEMENT. The Service Level Agreement(s) listed below are part of this Agreement for those Services Customer is buying:

        a. Network. MCS shall use reasonable commercial efforts to ensure that MCS's data center network will be available 100% of the time in any given monthly billing period, excluding scheduled maintenance.

        b. Data Center Infrastructure. Any event of a power outage shall be considered an "Infrastructure Outage". For customers providing their own servers, MCS shall use reasonable commercial efforts to ensure that data center HVAC and power will be functioning 100% of the time in any given monthly billing period, excluding scheduled maintenance. For any customer providing its own server(s) for use in conjunction with the Services, any event of temperatures exceeding acceptable levels pursuant to ASHRAE standard TC 9.9 in an area where such customer's Servers are being utilized shall be considered an "Infrastructure Outage."

        c. MCS Equipment. MCS shall use reasonable commercial efforts to ensure the functioning of the physical equipment which host Customer's cloud servers or information. If such equipment fails, MCS shall use reasonable commercial efforts to ensure that restoration or repair will be complete within one hour of problem identification.

        d. Migration. If a migration is required, MCS will notify Customer at least 24 hours in advance of beginning the migration, unless MCS determine in MCS's reasonable judgment, that MCS must begin the migration sooner to protect Customer's data. Either way, MCS shall use reasonable commercial efforts to ensure that the migration will be complete within three hours of the time that MCS begin the migration.

        e. Credits. If MCS fails to meet a guarantee stated above, Customer will be eligible for a credit. Credits will be calculated as a percentage of the fees for the servers adversely affected by the failure for the current monthly billing period during which the failure occurred (to be applied at the end of the billing cycle), as follows:

- Network: Five percent (5%) of the monthly fees for each 30 minutes of network downtime, up to 100% of monthly fees;
- Data Center Infrastructure: Five percent (5%) of fees for each 30 minutes of Infrastructure Outage, up to 100% of fees;
- MSC Equipment: Five percent (5%) of monthly fees for each additional hour of downtime, up to 100% of monthly fees;
- Migration: Five percent (5%) of monthly fees for each additional hour of downtime, up to 100% of the monthly fees.

- Limitations. Customer is not entitled to a credit if Customer is in breach of this Agreement (including any payment obligations) until Customer has cured the breach. Customer is not entitled to a credit if downtime would not have occurred but for Customer's breach of this Agreement by Customer or Customer's misuse of cloud server system. To receive a credit, Customer must contact MCS's account team within thirty (30) days following the end of the downtime. Customer must show that its use of the Services was adversely affected in some way as a result of the downtime to be eligible for the credit. This Service Level Agreement is Customer's sole and exclusive remedy for server unavailability. Notwithstanding anything in this Service Level Agreement to the contrary, the maximum total credit for the monthly billing period, including all guaranties, shall not exceed 100% of Customer's total monthly fee for that billing period. Credits that would be available but for this limitation will not be carried forward to future billing periods.

    4. TERM. The Term shall commence upon the commencement of the services referenced in Exhibit A (the "Commencement Date") and shall expire on the date immediately preceding the three (3) year anniversary date of the Commencement Date (the "Expiration Date"), unless otherwise extended by written agreement between Customer and MCS. CUSTOMER ACKNOWLEDGES THAT CUSTOMER WILL NOT BE ENTITLED TO ANY REFUND IN THE EVENT THAT THE THREE-YEAR TERM IS TERMINATED DUE TO THE BREACH OF CUSTOMER PRIOR TO THE EXPIRATION OF THE THREE-YEAR TERM.

    5. FEES. Customer shall pay to MCS in U.S. Dollars, monthly Service Fees and all such other recurring fees, payable in monthly installments as set forth in Exhibit A hereto, in advance on or before the first day of each and every calendar month during the Term, without any setoff or deduction whatsoever. Customer hereby acknowledges and agrees that Customer shall pay the monthly fees in the manner set forth in Exhibit A. The fees for the first full month of the Term, along with the entire Set-Up Fees then due and payable shall be due at the time of Customer's execution of this Agreement.

        a. Late Payments. Any amounts for which payment is not received within five (5) days after the due date of such payment will accrue interest on the unpaid sum at the lesser of (i) the highest legal rate of interest permitted under Massachusetts law or (ii) one and one-half percent (1.5%) per month. MCS may apply any payments received by MCS to any one of Customer's then outstanding charges. Continuing non-payment, including, but not limited to, any interests accrued or any additional charges, for more two (2)

calendar months after their due date may result in a 5-day notice of disconnection. All payment failures must be cured within 5 days of notice, including any interests accrued thereon. Customer's failure to make payment within 5 days of such notice may result in interruption of the Services and a $100 reconnection fee. If any amount is overdue by more than thirty (30) days, and MCS brings a legal action to collect, or engages a collection agency, Customer must also pay MCS's reasonable costs of collection, including attorney fees and court costs.

    b. Liens. MCS may exercise a right of lien over Customer's equipment hosted in Company's premises to secure payment of any charges due and payable by Customer to Company that remain unpaid after the due date.

    c. Credits. Any credit that MCS may grant to Customer, such as a credit for a SLA remedy, will be applied to unpaid fees for services or refunded to Customer, at MCS's option.

6. CREDIT REPORT. Customer authorize MCS to obtain a credit report at any time during the term of the Agreement.

7. SUSPENSION. MCS may suspend the Services without liability if: (i) MCS reasonably believes that the Services are being used (or have been or will be used) in violation of the Agreement, (ii) MCS discovers that Customer is, or is affiliated in any manner with, a person who has used similar services abusively in the past; (iii) Customer doesn't cooperate with MCS's reasonable investigation of any suspected violation of the Agreement; (iv) MCS reasonably believes that the Services have been accessed or manipulated by a third party without Customer's consent, (v) MCS reasonably believes that suspension of the Services is necessary to protect MCS's network or MCS's other customers, (vi) a payment for the Services is overdue, or (vii) suspension is required by law. MCS will give Customer 30 days' written notice or, if circumstances do not reasonably allow for 30 days' written notice, as much written notice of a suspension as is reasonably practicable under the circumstances and a chance to cure the grounds on which the suspension are based, before ore after initiation of the suspension. If the suspension was based on Customer's breach of its obligations under the Agreement, then MCS may continue to charge Customer the fees for the Services during the suspension, and may charge Customer a reasonable reinstatement fee (not to exceed $150) upon reinstatement of the Services.

8. TERMINATION. MCS may terminate the Agreement for breach on 30 days' written notice or, if circumstances do not reasonably allow for 30 days' written notice, as much written notice as is reasonably practicable under the circumstances if: (i) MCS discovers that the information Customer provided to MCS about Customer or Customer's proposed use of the Services was materially inaccurate or incomplete, (ii) if Customer is an individual, Customer was not at least 18 years old or otherwise did not have the legal capacity to enter into the Agreement at the time Customer submitted the order for Services, or if Customer is an entity or fiduciary, the individual submitting the order for Services did not have the legal right or authority to enter into the Agreement on behalf of the person represented to be the customer, (iii) Customer's payment of any invoiced amount is overdue, and Customer does not pay the overdue amount within three (3) days of MCS's written notice, (iv) a credit report indicates Customer no longer meet MCS's reasonable credit criteria, provided that if MCS terminates on these grounds, MCS must give Customer a reasonable opportunity to migrate Customer's environment out of its servers in an orderly fashion, (v) Customer fails to comply with any provision of the Agreement and does not remedy the failure within thirty (30) days of MCS's notice to Customer describing the failure. Customer may terminate the Agreement breach on written notice if: (i) MCS materially fails to provide the Services as agreed and does not remedy that failure within thirty (30) days of Customer's written notice describing the failure, or (ii) MCS materially fails to meet any other obligation stated in the Agreement and does not remedy that failure within thirty (30) days of Customer's written notice describing the failure.

9. ACCESS TO DATA.
    a. MCS will back up data on the MCS systems as described in Exhibit A.
    b. Although the MCS Services may be used as a backup service, Customer agrees that Customer will maintain at least one additional current copy of Customer's programs and data stored on the MCS system somewhere other than on the MCS system.

10. UNAUTHORIZED ACCESS OR USE OF THE SERVICES. MCS is not responsible to Customer for unauthorized access to Customer's data or the unauthorized use of the Services unless the unauthorized access or use results from MCS's failure to meet its security obligations stated in the Agreement or the accompanying Business Associate Addendum. Customer is responsible for the use of the Services by any of its employees, any person to whom Customer has given access to the Services, and any person who gains access to Customer's data or the Services as a result of Customer's failure to use reasonable security precautions, even if such use was not authorized by Customer.

11. EXPORT MATTERS. Customer represents and warrants that Customer is not on the United States Department of Treasury, Office of Foreign Asset Controls list of Specially Designated National and Blocked Persons and is not otherwise a person to whom MCS is legally prohibited to provide the Services. Customer may not use the Services for the development, design, manufacture, production, stockpiling, or use of nuclear, chemical or biological weapons, weapons of mass destruction, or missiles, in a country listed in Country Groups D: 4 and D: 3, as set forth in Supplement No. 1 to the Part 740 of the United States Export Administration Regulations, nor may Customer provide administrative access to the Service to any person (including any natural person or government or private entity) that is located in or is a national of Cuba, Iran, Libya, Sudan, North Korea or Syria or any country that is embargoed or highly restricted under United States export regulations.

12. CONFIDENTIAL INFORMATION. "Confidential Information" shall include but is not limited to (a) the trade secrets, engineering specifications, customer identities and locations, customer issues, structural or equipment configurations or malfunctions, costs, financial information, customer information, marketing communication material, SAS70, SSCAE 16 SOC 1, SOC 2, SOC 3, or other audit reports and other information related to the business activities of MCS and Customer, regardless of any restrictive markings, which MCS and Customer learn or receive from each other; and (b) any notes, analyses, compilations, studies, interpretations, memoranda or other documents prepared by MCS or Customer which contain, reflect or are based on, in whole or in part, any

Confidential Information furnished to Markley or Customer to each other pursuant hereto. MCS and Customer agree not to use the other's Confidential Information except in connection with the performance or use of the Services, as applicable, the exercise of MCS's respective legal rights under the Agreement, or as may be required by law. MCS and Customer agree not to disclose the other's Confidential Information to any third person except as follows:

- To MCS's respective service providers, agents, and representatives, provided that such service providers, agents, or representatives agree to confidentiality measures that are at least as stringent as those stated in this Agreement.

- To law enforcement or government agency if required by a subpoena or other compulsory legal process, or if either of us believes, in good faith, that the other's conduct may violate applicable criminal law as required by law; or

- In response to a subpoena or other compulsory legal process, provided that each MCS and Customer to give the other written notice of at least seven days prior to disclosing Confidential Information under this subsection (or prompt notice in advance of disclosure, if seven days advance notice is not reasonably feasible), unless the law forbids such notice.

13. LIMITATION ON DAMAGES. Except as set forth in paragraph 14 herein, MCS's OBLIGATIONS TO CUSTOMER ARE DEFINED BY THIS AGREEMENT, MCS IS NOT LIABLE TO CUSTOMER FOR FAILING TO PROVIDE THE SERVICES UNLESS THE FAILURE RESULTS FROM A BREACH OF THIS AGREEMENT, OR RESULTS FROM MCS'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. THE DOLLAR CREDITS STATED IN THE SERVICE LEVEL AGREEMENT ARE CUSTOMER'S SOLE AND EXCLUSIVE REMEDY FOR UNAVAILABILITY OF THE SERVICES. NEITHER CUSTOMER NOR MCS (NOR ANY OF MCS'S EMPLOYEES, AGENTS, AFFILIATES OR SUPPLIERS) IS LIABLE TO THE OTHER FOR ANY LOST PROFITS OR ANY OTHER INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL LOSS OR DAMAGES OF ANY KIND, OR FOR ANY LOSS THAT COULD HAVE BEEN AVOIDED BY THE DAMAGED PARTY'S USE OF REASONABLE DILIGENCE, EVEN IF THE PARTY RESPONSIBLE FOR THE DAMAGES HAS BEEN ADVISED OR SHOULD BE AWARE OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL EITHER MCS OR CUSTOMER BE LIABLE TO THE OTHER FOR ANY PUNITIVE DAMAGES. NOTWITHSTANDING ANYTHING IN THE AGREEMENT TO THE CONTRARY, THE MAXIMUM AGGREGATE MONETARY LIABILITY OF MCS AND ANY OF ITS EMPLOYEES, AGENTS, SUPPLIERS, OR AFFILIATES IN CONNECTION WITH THE SERVICES, THE AGREEMENT, AND ANY ACT OR OMISSION RELATED TO THE SERVICES OR AGREEMENT, UNDER ANY THEORY OF LAW (INCLUDING BREACH OF CONTRACT, TORT, STRICT LIABILITY, VIOLATION OF LAW, AND INFRINGEMENT) SHALL NOT EXCEED THE AMOUNT OF FEES CUSTOMER PAID FOR THE SERVICES DURING THE TERM OF THIS AGREEMENT.

14. INDEMNIFICATION. If either party, its affiliates, or any of its or their respective employees, agents, affiliates or suppliers (the "Indemnitees") are faced with a legal claim by a third party arising out of the other party's failure to meet the security obligations required by the Agreement or the Business Associate Addendum of Customer (the "Indemnitor"), then the Indemnitor will pay the cost of defending the claim (including reasonable attorney fees) and any damages award, fine, or other amount that is imposed on the Indemnitees as a result of the claim. Indemnitor's obligations under this subsection include claims arising out of the acts or omissions of Indemnitor's employees, any other person to whom Indemnitor has given access to the Services, and any person who gains access to the Services as a result of Indemnitor's failure to use reasonable security precautions, even if the acts or omissions of such persons were not authorized by Indemnitor. Indemnitees will choose legal counsel to defend the claim, provided that these decisions must be reasonable and must be promptly communicated to Indemnitor. Indemnitor must comply with Indemnitees' reasonable requests for assistance and cooperation in the defense of the claim. Indemnitor must pay expenses due under this Section as Indemnitees incur them. Neither party will have any duty to indemnify the other for any claims arising out of the gross negligence or willful acts of the other or its employees, agents, affiliates or suppliers. MCS's obligation to indemnify Customer under this Section 14 shall not exceed the amount of fees customer paid for the Services during the Term of this Agreement.

15. NOTICES. All notices, demands, statements, approvals or other communications (collectively, "Notices") given or required to be given by either party to the other hereunder or by law shall be in writing and (i) sent by United States certified or registered mail, postage prepaid, return receipt requested ("Mail"), (ii) delivered by a nationally recognized overnight courier, or (iii) delivered personally. Any Notice shall be sent to Customer or MCS at the addresses provided below, or to such other places as Customer or MCS may from time to time designate in a Notice. Any Notice will be deemed given upon the earlier of (A) three (3) days after the date it is posted if sent by Registered or Certified Mail, (B) the date the overnight courier delivery is made or attempted to be made, or (C) the date personal delivery is made.

| If to Customer: | If to MCS: Markley Cloud Services |
| --- | --- |
| | One Summer Street, 5th Floor |
| | Boston, MA 02110 |
| | Attention Legal Department |
| | 617.451.6464 |

16. NO HIGH RISK USE. Customer may not use the Services in any situation where failure or fault of the Services could lead to death or serious bodily injury of any person, or to physical or environmental damage. For example, Customer may not use, or permit any other person to use, the Services in connection with aircraft or other modes of human mass transportation, nuclear or chemical facilities, or Class III medical devices under the Federal Food, Drug and Cosmetic Act.

17. OWNERSHIP OF INTELLECTUAL PROPERTY. MCS and Customer each retains all right, title and interest in and to their respective trade secrets, inventions, copyrights, and other intellectual property. Any intellectual property developed by MCS during the performance of the Services shall belong to MCS unless MCS has agreed with Customer in advance in writing that Customer shall have an interest in the intellectual property.

18. **IP ADDRESSES.** Upon expiration or termination of the Agreement, Customer must discontinue use of the Services and relinquish use of the IP addresses and server names assigned to Customer by MCS in connection with Services, including pointing the DNS for Customer's domain name(s) away from MCS Services. Customer agree that MCS may, as it determines necessary, make modifications to DNS records and zones on MCS managed or operated DNS servers and services.

19. **ASSIGNMENT/SUBCONTRACTORS.** Customer may not assign the Agreement without MCS's prior written consent. MCS may assign the Agreement in whole or in part as part of a corporate reorganization or a sale of MCS's business. MCS may use third party service providers to perform all or any part of the Services, but MCS remains responsible to Customer under this Agreement for work performed by its third party service providers to the same extent as if MCS performed the Services itself.

20. **FORCE MAJEURE.** Neither MCS nor Customer will be in violation of the Agreement if the failure to perform the obligation is due to an event beyond its control, such as significant failure of a part of the power grid, significant failure of the Internet, natural disaster, war, riot, insurrection, epidemic, strikes or other organized labor action, terrorism, or other events of a magnitude or type for which precautions are not generally taken in the industry.

21. **GOVERNING LAW, LAWSUITS.** The Agreement is governed by the laws of the Commonwealth of Massachusetts. The Exclusive venue for all disputes arising out of the Agreement shall be in the state or federal courts in Suffolk County, Massachusetts, and MCS and Customer each agree not to bring an action in any other venue. Customer waives all objections to this venue and agrees not to dispute personal jurisdiction or venue in these courts. Customer agrees that Customer will not bring or participate in any class action lawsuit against MCS or any of its employees or affiliates. MCS and Customer both agree that they will not bring a claim under the Agreement more than two years after the time that the claim accrued.

22. **COUNTERPARTS.** The Agreement may be signed in multiple counterparts, which, taken together, will be considered one original. Facsimile signatures, signatures on an electronic image (such as .pdf or .jpg format), and electronic signatures shall be deemed to be original signatures.

23. **NO VIOLATION.** Customer hereby warrants and represents that neither its execution of nor performance under this Agreement shall cause Customer to be in violation of any agreement, instrument, contract, Law, rule or regulation by which Customer is bound, and Customer shall protect, defend, indemnify and hold MCS harmless from and against any and all Claims arising from Customer's breach of this warranty and representation.

IN WITNESS WHEREOF, MCS and Customer have caused this Agreement to be executed the day and date first above written.

"MCS":
MARKLEY CLOUD, LLC,
a Delaware Limited Liability Company

By: _____
Name: DEVON S CUTCHINS
Title: SENIOR VP & CLO

"Customer":
UFCW LOCAL 1262

By: _____
Name: LLOYD BURLEW
Title: IT DIRECTOR

--4--

## EXHIBIT A

## SERVICES, TERM AND FEES

1. **Description of Services:**

    i. MCS will provide virtualized compute, network, and storage services via a self-service portal allowing the user to manage and maintain their own environment. The services, provides via a 24x7 manner, also include customer support and technical support plus remote monitoring and alerting capabilities. In addition, MCS will provide professional services to assist in the design of a Disaster Recovery program that will enable the Clifton NJ HQ to remain operational should services to Boston MCS be unavailable for any reason. Finally, MCS will provide backup capabilities to both aide the DR operation and the daily operational requirements.

2. **Term:**

    i. Three (3) years

3. **Fee(s):**

    i. $ 2584.69 monthly (includes 24x7 technical support and monitoring)

4. **Other:**
    i. N/A

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 15-0991C

Markley Cloud Services, LLC , Plaintiff(s)

v.

United Food and Commercial Workers , Defendant(s)
Local 1262

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon _____

_____

plaintiff's attorney, whose address is _____ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esquire, at Boston, the _____ day of _____, in the year of our Lord two thousand _____ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
    (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV. P. 1  12M – 1/15

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on _____, 201_5_, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

__I, Joni Jacobs, counsel for UFCW Local 1262, hereby accepts__
__service of process.__
_____

Dated:_____, 201_5_.
                                                                Joni Jacobs

N.B.  TO PROCESS SERVER: –
      PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
      THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

                                                    , 201    .

Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 15-0991C

Markley Cloud Services, LLC , Plff(s).

v.

United Food and Commercial Workers , Deft(s).
Local 1262

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)